Department. The next case will be John Kirkendall v. Department of the Army. Mr. Herring, whenever you're ready. May it please the court, my name is Justin Herring and I represent the petitioner John Kirkendall. The Army violated my client's VOA rights, specifically under Section 33.11.2 when it refused to credit him with all the material experience he had for the position he was seeking. The Army did this even though his application clearly showed that he had the requisite experience and even though the Army's own witness testified the application showed that. Mr. Herring, there seems to be some dispute about the contents of your client's original application package. Your client testified that his ORB was in the original package and didn't include the ORB. Was there any testimony from any of the government people about what was in the contents of the original filing? Judge, there was, when the government's witnesses were asked, when Ms. Toliver was asked, she said that she frankly didn't remember what was in the original packet. Mr. Kirkendall did testify under... I know exactly what he testified. I mean, your case is stronger if the ORB is in the record than if it's not. The Administrative Law Judge, when the Administrative Law Judge described what was in the original package cited to an exhibit, I believe, and he did not include the ORB in the listing. He had the OER and the discharge certificate. What I'm trying to get at is, did the trial judge make a ruling that the ORB was not in the original package? Well, Judge, the trial judge absolutely did not make any finding that the ORB was not in the original packet. He described the contents of the original package. What are we supposed to do with that? That's on page 5 of his opinion. Well, as this court has explained in Larson and some other decisions, you can't have an adverse credibility finding through silence or by implication. In the government's contention... When you were at the hearing, I'm asking you to represent us whether there was any testimony from anybody else other than your client about what the contents of the original application was. There was Mr. Gentry's testimony that he reviewed the ORB. We know the ORB got in. That doesn't answer my question. The lady said she didn't remember. That's correct, Judge. Mr. Gentry said only that he... The only thing Mr. Gentry said is that he did not review the ORB. That is the extent of the government's testimony on that subject. But turning to what the administrative judge found, he certainly did not make an adverse finding, and I think it would contradict this court's finding in Larson and other cases to say that the administrative judge can make an adverse credibility finding, can conclude in effect that my client lied under oath simply through silence. Moreover, I would point out, Judge, that there is no evidence or indication in the record that my client misspoke or mistestified. There is... Even if the judge had made an adverse credibility finding, it's not clear on what basis he possibly could have made such a decision or how it could be supported by... I won't take a lot of time here for the argument, but it does... I think your case is harmed if the ORB is not in the record. It's enhanced if it is. Well, I certainly agree, Judge, that the ORB helps our case a good deal. The only concluding point that I would make about that is that the only thing we have on the record here is sworn testimony that it was in the initial application and nothing to contradict that whatsoever. And certainly no express finding by the administrative judge that my client was not credible on that point. What's the remedy for a violation of the statute here? It's laid out in 3330C, 5 U.S.C. 3330C, Judge. The violation of the statute, first and foremost, is an order... The remedy, first and foremost, is an order of compliance directing the agency to reconstruct the hiring process in compliance with law. My client would also be entitled to back wages if he could show that he received the job. Well, he has to win the job. Yes, he would have to show that in reconstruction. All we're talking about is getting in the talent pool. Absolutely. That's what we're talking about, Judge. He would also be... He would also receive the data damages if we could show, as we believe we have, that there was a willful violation of his VEOA rights. Attorney, what then would happen to the person who... I guess it was Mr. Black? Yes. Who received the position. Received the position. I guess he was from... He was at the base and he was given the position. Yes, Judge. What would happen to him if you prevailed? It's not... The reconstruction is the standard procedure. What typically happens is the Army will often simply pay, or the agency will simply pay back wages and grant an equivalent position at this point to your client, to my client. At this point, frankly, the Army has dragged this case out for so long, it's not clear what positions remain. That's just not in the record. And while we're on remedy, what would you think is an appropriate remedy for the destruction of the records during the course of litigation? Well, the appropriate remedy, Judge, would be a sanction against the Army. I mean, it has been... A number of circuits have held that when you destroy documents, that is enough to assume that the documents are adverse to the possessor. That is a reasonable assumption. And the administrative judge abused his discretion by refusing to sanction the Army for destroying the applications, as you just pointed out, the applications of other individuals who applied, in particular, the applications of the non-veterans who applied. The government itself actually cites to the applications that we do have in the record. And so, in a sense, the government is speaking out of two sides of its mouth. On the one hand, it wants to say that the destroyed applications weren't material, but on the other hand, it's perfectly happy to cite the applications we have to try to draw a comparison. We would contend the comparison between the way that those applicants were treated and the way that Mr. Kuykendall was treated are absolutely material in the case. So it's destroying the documents according to a document retention policy, right? Yes. It wasn't willful. I mean, there's no showing that someone said, please go in and destroy these records, which are unsubjudicated. Well, we tried to ask some questions about that at the hearing below, and the Army successfully objected. So we just don't have any record on that at all. But it was while the litigation was pending. Absolutely. The documents were destroyed in 2000. They were destroyed in 2002. They were destroyed at our contention. Yes, Judge. Absolutely. And one, they denied that Black's file was available until this year. Until weeks before the hearing on the merits. Last year. Yes, absolutely. And they produced that document. Then they were trying to rely on it, even though that was one they said was not available. Yes, Judge. Yes, and it is troubling that there's the kind of, the Army seems to want the selective reliance on certain applications, but not others. I mean, but argue that somehow the other ones are immaterial. Am I right in what I'm about to say, which is I understood the agency to take the position that the material that was in the OER and in the ORB is simply irrelevant unless it corroborates the same information that already existed in the application. That is the Army's position. Yes, Judge. And that position, however, is really baseless. So, for example, you couldn't, from the Army's point of view, you can't incorporate something by reference, simply incorporating it by reference. You couldn't say in your application, please see Exhibit A. You'd have to take what's in Exhibit A and put it in your application and then say, if you want to see something duplicative, go look at Exhibit A. Well, Judge, the Army might say that, but in fact, the ORB and the OER were included as part of the application. They weren't somehow attached to the application or incorporated by reference. And the Army's contention, and Mr. Gentry's contention, that they should not have considered the OER and the ORB is really without, not only is it without any basis at all, it's in fact contrary to federal regulation. Both the job posting and the federal register state that an application can be in any written format. There's no dispute that the OER and the ORB are documents in a written format. Could your application be in French? The French language? Your Honor, I... Could it be rejected for being in the French language? Yes, Your Honor, it could be rejected for being in French. What happens if your application is in militaries? Army talk. Wasn't that one of the grounds that the gentleman who wrote the final letter said, look, my people aren't, my civilian people aren't expected to understand military talk and translate? Judge, first of all, what we have here is we have an Army personnel document. It's really virtually the equivalent of a, for a lawyer, the equivalent of a transcript from prior experience. It's a universal document. And it's really, it's the Army's own personnel document being considered, being looked at, being included as part of an application for a job with the Army. Your Honor, far from being cryptic or incomprehensible, this document is a universal routine document possessed by all officers in the military. And Mr. Gentry testified... It tells you, for example, in his last job it was casual, whatever that was. The last line on the ORB, Judge, refers to his departure from the military. His, in the last... I didn't bring my magnifying glass. I look at the bottom of the ORB and your contention is that the dates over on the left, if you know how to read them, are from to... The copy was a little clearer. But you look, you see he was a platoon leader in Fort Parson for a period of time. Yes, Judge. But that doesn't really tell you what he did as a platoon leader, I suppose, unless you know what platoon leaders do. Well, unless you turn the page in his application and look at the resume, Judge, which actually describes what he did in each of these positions. And also the OER, which describes what he did as a maintenance officer. And it's not just my contention, Judge, or my client's on the record that the ORB shows the tabulation in months that Mr. Kirkendall occupied each position that he had in the Army. And he also testified this is the kind of document that he's familiar with and that people... His officers are familiar with because... He said there's 384, 385 of the record because they deal with lots of veterans and because they place many people into the military. So, if at one extreme you have the application in French, which is incomprehensible, this is at the opposite extreme. This is a core military document that the government's own witnesses have testified they're familiar with. And testified that it shows exactly what we say it shows. Shows the tabulation in months. It shows the tabulation in months for each prior position that Mr. Kirkendall held. There isn't any question that he has physically... Any issue in this case about whether he is physically capable of doing... Absolutely not. That has never been contended by anyone. The disability is not a fact. Yes, Judge. Is there any... Can you point to me in any of his documents here in his application that show his knowledge of supply, contracting, budget, and business operation fund activities? Well, Judge, as a preliminary matter, and again, this is not... Can you answer that yes or no? Yes. He was an aviation maintenance officer. And it says that in his OER. I believe it says that on his resume that appears on 8182. It says that he commands... Does the maintenance person deal with budget problems? His OER does describe how he managed and requisitioned. And his resume also described how he managed and requisitioned parts. And how he streamlined the process. Judge, and I think that goes directly to the kinds of... I don't think it's important at this stage in the game for you. Because your argument is that he made a sufficient application in order to be considered. Yes, absolutely, Judge. And again, like I said, it's not just me. Mr. Gentry said it too. He said it at 368. I believe he said it at 366 too. Yeah, I can tell that these positions are sufficiently related to the opening. That they qualify as a specialized experience. So it's more than just us. It's the government's own witness. And with that, I will reserve the remainder of my time. Is it agreed that the position for which he was applying is a position that he actually held while serving in the military that got civilianized? Your Honor, he testified and certainly there was no contrary testimony. It is a matter of record that he was an aviation maintenance officer at Fort Bragg. And he testified and there was no testimony to the contrary. That was essentially the military equivalent of the civilian... This is a civilian version of that same job that he was applying for. At the same facility? At the same exact facility. Thank you. Thank you. And I'll reserve the remainder of my time for rebuttal. Mr. Austin. Thank you, Your Honor. May it please the Court. This Court should affirm the decision of the Board because Mr. Kirkendall failed to demonstrate that the Army violated any Veterans Preference Statute. In particular, 5 U.S.C. Sections 33.11.2, 33.13, and 33.09.1 in determining that he was unqualified for the supervisory equipment specialist position for which he applied. This Court should also affirm the Board's decision denying Mr. Kirkendall's motion for an adverse inference and a shifting of the burden of proof based upon the destruction of certain documents because the Administrative Judge did not abuse his discretion in denying that motion. Finally, the Administrative Judge's decision complies with the procedural requirements of 5 CFR Section 120.111B and even assuming there was noncompliance, which there wasn't, Mr. Kirkendall has not demonstrated that he was harmed by that purported noncompliance. Now, why is it that it's not an abuse of discretion when the documents that he needed to demonstrate his case were destroyed once they found out he was challenging it? It's not an abuse of... Well, first of all, Your Honor, there are two different standards. And the first standard for determining the remedy for... Why was it not wrong for the Administrative Judge not to sanction them in some way? They're destroying the documents that are essential to the case. Well, the first response goes to Your Honor's assumption that it's central to the case. It's not central to the case. How would he prove a case otherwise? Well, he'd prove his case by... Well, there's two parts to it. The documents are pertinent to the case. They were relevant to the case. What would happen to you in a court of law if you destroyed pertinent documents? There's no question they're relevant. You would stand up in a straight face and say, Well, Your Honor, they really weren't that important. Well, Your Honor, certainly if the discovery request had come in, we would not refuse to turn them over on the document. They're not admissible evidence or reasonably would lead to the discoverability of admissible evidence. The point is, in this particular case, they're not material in light of all the evidence that existed. Particularly with the USARA claim, there are seven veterans who applied for this position. Seven veterans who applied. Six were determined to be qualified. The only one who wasn't determined to be qualified was Mr. Kirkendall. He wasn't determined to be qualified because of what was on his resume. It had nothing to do, as the administrative judge stated, with respect to the fact that he had military. Besides the fact that it defies common sense, really, why the Army would discriminate on the basis of a military background, it's hard to believe that they would. They approved six of the seven people here. You have to look at the facts to determine, not whether they were relevant, certainly they were relevant, but were they material, were they sufficient enough that they could have changed the outcome of this case? Certainly they couldn't have. It's interesting to look at the facts. We know that. We have to take your word for it. We don't know, Your Honor. Especially the ones that were done by a veteran. One way we know that is, for example, to compare it to the case they cite, the Nativi Dodd case, which is not a case of this Court, but it's a case from the Board. In the Nativi Dodd, these were documents that were destroyed that were the substance, the very heart of the case. In fact, there was an allegation of falsification of documents, and these documents were the originals of what he allegedly falsified. In that case, the petitioner knew exactly what the documents held. In his view, he said they would exculpate him. In this case, we don't know what the documents were. We can use any logical inference to say they were peripheral at best. There are only two possible of the 12 applications that could have anything to do with USERRA, for example, and they were two non-veterans who were determined to be qualified. Using pure speculation, perhaps Mr. Kirkendall could have shown some difference in the analysis that applied with respect to those two applications, but even those veterans didn't make the certificate of eligible. If the Army was going to discriminate on the basis of military experience for whatever reason, it wouldn't with them because it didn't help those non-veterans. It's just illogical that these documents could have altered a finding by the administrative judge that there was no evidence whatsoever to support the USERRA claim. One Judge Clevenger was asking Mr. Herring if the ORB was in the original file. I guess we're talking here about the file that was presented to Ms. Tolliver during the initial eligibility determination. What is your position on that as far as what the record shows? I do not dramatically disagree with what Mr. Herring represented to the court. I do disagree with him on one point, and that is I think there is a clear finding by the administrative judge that it was not included in the record. And that's clearly erroneous. No, I don't think it is clearly erroneous. Was there any adverse credibility? Here's how I view the evidence as a whole on that point. Did anybody testify? Mr. Kuykendall testified he submitted it. He testified it was in there because when it was shown in the exhibit, which didn't include the ORB, he said, well that's got everything, my original identification, except my ORB. Mr. Kuykendall provided testimony. Was there any testimony from any of your clients that said that the ORB was not in the original package? The testimony I think counsel correctly represented is ambiguous on that. They said they do not know. What makes their substantial evidence support the administrative judge's finding on that point are two things. First of all, if you look in the record, there are documents that are put together from the original application does not include the ORB. I do not know why that is, but it's in a separate place. But the reason that's important is if you look at the facts of this case, But there's testimony, sir. There's testimony under oath from Mr. Kuykendall that said my ORB was in the original package. That's correct. Now, if he is incredible, if the trial judge says I think you're a liar, right, then that can undercut Mr. Kuykendall's testimony. There's no such finding. There is not. However, Mr. Kuykendall could also be mistaken. Excuse me, he testified flat out. It's missing. It was in there. He doesn't have to be lying. He could be mistaken. He could honestly believe that but be wrong. And the reason that's a particular possibility here, Your Honor, is because we have a second resume that was submitted, a third resume that was submitted, various notices of disagreement, and all sorts of filings that came in at different times. I would agree with you, Your Honor, that if there were just one submission of a resume and the ORB is clearly in the record, then you could reasonably conclude it came in at that time. But when you have all these various submissions... Let's assume, for purposes of argument, that the original filing included the OER and the ORB and the discharge report. Right, it's certainly helpful to them to have it at that time. Your client decided that it would ignore, it would not pay attention to what was in the military document. That's correct, Your Honor, and that was a reasonable decision. They were presented with evidence by the veteran that related to experience that he had had that was material to the position for which he was being examined. Correct? I would agree with that, Your Honor. You don't believe that the military documents are showing at least some experience, material to the position for which he was examined? I think what's important, Your Honor, is... Does it show that he knew about rotary wing copters? It certainly shows that he knew more about them than without the document. He flew them, right? Excuse me? He flew them. He flew them, that's correct. Do you think somebody can fly a copter without knowing about its characteristics? Flying and maintenance are two separate things. But, Your Honor, the important part here is that... I want to stay on the point. You think that it was perfectly legitimate under 3311 for your client to simply, in essence, throw those military documents in the wastebasket? I think it was reasonable for the Army to set up a process by which it would evaluate applications and to utilize its process in a reasonable manner to review applications. To exclude experience that's material to the position under which it was examined. You think they set up a process that excludes the information and the process still passes muster? Well, Mr. Gentry explains that on JA 173. He states, There is no requirement for my staff to interpret any personnel administrative formats other than those required for federal civil service employment nor did they request in the vacancy announcement that such other forms be provided with your resume. Neither is it required that my staff have a comprehensive knowledge of the military personnel assignment system, inclusive of military occupational series, military training doctrine, and significant assignment systems or military grades and ranks. That is the way that the personnel office operates within the Army. It's a very poor way of operating within the same environment as the military, but maybe they're not required to know it, but they certainly could be required to find it out. Well, it's a civilian... And they can certainly do it very easily because they're in the same organization. Well, I would point to this, Your Honor, and that is that the requirement is simply what is required in the SF-171 and the other forms that are administered. The SF-171 doesn't exist anymore. Well, when it did at this time. The problem is that when the government decided that they didn't want to have a SF-171, which is the most rigid little document in the world, and they said, You want to apply for a job in the government, you know, right on the back of your, an envelope. No particular form is required. Right, but the point is here that they want to have a central document. Isn't Gentry saying essentially, Oh, yes, a form is required? You can't just give us bits and pieces of information that respond to our request for information. You've got to package it up the way it used to be packaged up. No, what Mr. Gentry is saying that we do not want to transform a document ourselves onto your resume. You put on your resume what the dates are that you worked in that position, and demonstrate why you qualify for the position. Don't leave it up to the personnel office to try to understand what could be an endless array of documents for an endless amount of positions, and try to transform it themselves into your resume. And for example, let's look at the ORB. Let's actually look at the ORB and try to translate it, even if we get that far. What it says is, as best I can read it, it doesn't have a beginning date or an ending date, but for the two positions that Mr. Kuykendall identifies on his first resume. And again, he identifies a third position on his third resume, three weeks after Mr. Black was selected for the position. Why did he put that on his first resume? But let's look at what it says here. It says that he spent nine months in the first position, and three months in the second position. Well, Mr. Kuykendall, on his third resume, says he spent 14 months in one position, and four months in the other. So the very document that he relies on shows that he would have the bare minimum, the 12 months of requirements for the position. And that would only be, if he can substantively fulfill the requirements for all 12 of those months, did every one of those requirements on each of his time. It's a bit different from the eight and nine years of requirements that Mr. Black and the other veterans, and the other disabled veterans who made the certificates of eligibility had. And he uses languages like coordinates and monitors. Well, Ms. Tolliver didn't understand what that meant, that he met the specific requirements. He puts on his resume, which is at JA 87, he says he worked in this position, which the ORB says he worked at at three months, from 1989 to 1989. What does that mean? One day, one month, two months, three months? Ms. Tolliver did not understand what he meant by that. So even if you use the ORB, you just get the three months, even though two months after Mr. Black is appointed, he says it was four months. He says 1989 to 1990 for his first job. Does that mean he started in December and ended in January? Ms. Tolliver didn't know. What needs to occur here is not to turn the board into another personnel system. What needs to occur here is, as this court said in Abel, is to ensure that the Navy uses, I'm sorry, the Army uses a reasonable process. Well, Tolliver didn't know a lot, but her supervisor did, and wondered why she had not considered these things. Well, I don't agree with that interpretation of the testimony. I believe what Mr. Gentry said. Again, Mr. Gentry had viewed all three resumes. He viewed all three resumes, and by the time the third resume had been submitted, which is a concession by Mr. Kirkendall, that he didn't do a very good job on the first resume, because he didn't even put in, didn't even list the position, which he claims is half of his time, that qualifies him for the position that puts him between two years and three years. But after all that, what Mr. Gentry says, I think it's embedded in there. I think if you look at all three of his resumes, if you look at the documents that were submitted late, if you look at the documents that the Army does not consider, and it's our policy not to consider, I think it's there. If he does another resume, and lists this in the appropriate fashion, which we can consider for a subsequent position. He never said, based upon the information that was submitted at the time, that he would agree with any determination that Mr. Kirkendall demonstrated that he was qualified for the position. And I would emphasize to the Court, the issue here is not whether or not Mr. Kirkendall was qualified for the position. The issue is whether Mr. Kirkendall demonstrated that he was qualified for the position, and he did not. And the Army had a reasonable process as this required and able to assure that that happens. And if nothing else, I think this Court should look at the sheet that Ms. Tolliver used, which is at Appendix 75, which shows the analysis that she did. And I think this Court should see from that document that there was a reasonable analysis that was applied here. A reasonable determination was made that he didn't qualify. There is a reason why six veterans qualified, and Mr. Kirkendall didn't. It's because of a combination that he didn't have. That one says, unable to determine the extent of his knowledge of the characteristics and properties of rotary wing aircraft. That's one of the things that she mentions there, yes. What else did she mention? Well, she also, the lack of detail, she says, generally ahead of that, talking much broadly. She also claims that... Something brief? Duty's brief. Lacks detail. Lacks detail is duty's brief, referring to his resume. And then 1M, which is the overall determination that he was not qualified. The business about not knowing the characteristics and properties of a helicopter is just wrong, right? No, I believe it's right. If you give credit to the ORB. I believe it's still wrong, Your Honor. I believe if you look at his resume, which is what she was operating on, she could not tell that information. If you look at the ORB, you get closer. But then the ORB, if you look at that, first of all, it doesn't say anything about what he did. The ORB only talks about the time. It's the OER, I think, Your Honor, is probably referring to, which does give him credit in greater detail of having worked seven months. But that's all it shows. We will not ever know how he stacked up with the rest of them and what the rest of them submitted and how they treated it and how many resumes they submitted and what the ORB said and so forth or, in the civilian's case, the equivalents, because they were destroyed. Well, we do know for four people. We know for Mr. Kirkendall, who is a 10-point veteran, and we know the other three veterans who made the certificate of eligibles, two 5-point veterans and one 10-point veterans, they were preserved because they were in the discrimination claim that Mr. Kirkendall filed. Those documents were in that file. That's why we have them, and that's what was requested in that litigation. Had we requested all these files in the other litigation, then, you know, that would have been there, too. I think we've used up your time. Thank you. Thank you, Your Honor. Okay. If you need a minute or so more, then you may have it, since we gave counsel a lot of time. Thank you, Judge. Let me first clear up a mistake on the government's part. The government said that Mr. Gentry's opinion about the effectiveness and the clarity of Mr. Kirkendall's resume was based on looking at all three. At the hearing, I asked him, in reference to, specifically to the first resume. You can see from this resume that Mr. Kirkendall's prior positions give him the specialized experience that he needs, and he had one word answer, yes. That's at page 368. We walked him through every single resume and confirmed that each one, individually and independently, conveyed that information, and he said yes each time. I also think I also appreciate the government's candor. I think that the government's counsel just said that the ORB does show he used the word bare minimum. I guess he intended it as a slur, but he did say that it does show that he has, that it has the necessary 12 months of prior experience. The government's counsel and Mr. Gentry and Mr. Kirkendall are all in agreement on that point. Finally, the government's counsel pointed out that the subsequent resumes had more detail about other positions that were also relevant to the job opening, but that's simply besides the point. There's no requirement. As long as the first resume showed that he qualified for the job, it surely cannot be disqualifying that he actually had more experience than he showed on his first resume. Finally, the government makes reference to Ms. Tolliver's testimony, and I'd point out a couple of things about that. First of all, this court can decide what weight to give to Ms. Tolliver's testimony based on other evidence in the record, and we have here the applications, which are clear on their face and show what experience Mr. Kirkendall had. And secondly, Ms. Tolliver also, when she said that she couldn't discern that Mr. Kirkendall had the necessary experience, she also said that she refused to look at the OER. And the OER also contains glowing descriptions of the role that Mr. Kirkendall performed as an aviation maintenance officer, and so her determination that the resume was inadequate was based on a refusal to look at the other parts of Mr. Kirkendall's application. And finally, I would point out her testimony, as the court is well aware, was contradicted by her own supervisor, who said that that resume did, in fact, show that Mr. Kirkendall had the necessary qualifications. If you prevail on your V.E.O.A. statutory violation argument 3311, does the issue over the destroyed documents become moot? No, Judge, it's not. Is it a relief that you believe you're entitled to as opposed to our view that maybe the court itself should have provided a sanction to the government that doesn't benefit you? Yes, Judge, it's absolutely not moot. First of all, it's relevant to our USERRA claim, which we the classic method of an invidious discrimination case, as the court is well aware, is to compare members of the protected class to people who weren't in the protected class, and we just can't even do that without those documents. So it's absolutely relevant to our USERRA claim. And second, at a minimum for the V.E.O.A. claim, it helps us to show willfulness, so it's absolutely not moot to get those documents, and willfulness would entitle as a matter of remedy, would entitle our client to liquidated damages as well. So they're absolutely not moot. And the board is able to award liquidated damages? Well, the liquidated damages are provided for by the statute. The 3330C uses those as a legal violation. In conclusion, Your Honors, let me just say that if 3311, which requires agencies to take into account the material experience, all material experience for preference-eligible veterans, doesn't apply to Mr. Kirkendall, it's difficult to see how it could apply to any veteran at all. Frankly, I believe that this is a fairly easy case. You have here Mr. Kirkendall's applications, which are apparent on their face, which show that he had the necessary qualifications. And secondly, you have the government's own testimony, the government's witness' own testimony that those applications showed exactly that. Mr. Kirkendall has now been seeking relief on his claim for almost 10 years, and I would respectfully urge this Court to end his odyssey and to conclude that this record, the substantial evidence, can only support the conclusion that Mr. Kirkendall's VOA rights were violated. For those reasons and the reasons stated in our brief, we respectfully request that the Court reverse the MSPB. Thank you very much. Case is submitted.